Kevin D. McCullough
State Bar No.  00788005
Kathryn G. Reid
State Bar No.  24068126
Shannon S. Thomas
State Bar No. 24088442
ROCHELLE McCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone:  214-953-0182
Facsimile:  214-953-0185
kdm@romclaw.com
kreid@romclaw.com
sthomas@romclaw.com

GENERAL BANKRUPTCY COUNSEL FOR
ROBERT YAQUINTO, JR., CHAPTER 7 TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-32123-SGJ-7 |
| JRJR33, INC., and | § | CASE NO. 18-32124-SGJ-7 |
| THE LONGABERGER COMPANY | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-32123-SGJ-7 |

| | | |
|---|---|---|
| ROBERT YAQUINTO, JR., CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADV. CASE NO. 20-_____ |
| v. | § | |
| | § | |
| JGB COLLATERAL, LLC, JGB | § | |
| CAPITAL, LP, JGB (CAYMAN) PORT | § | |
| ELLEN, LTD., JGB PARTNERS, LP, | § | |
| ROCHON CAPITAL PARTNERS | § | |
| LENDING, LTD. f/k/a ROCHON | § | |
| CAPITAL PARTNERS, LTD., JOHN P. | § | |
| ROCHON, and DONNA ROCHON, | § | |
| | § | |
| Defendants. | § | |

## TRUSTEE'S ORIGINAL ADVERSARY COMPLAINT

**TO THE HONORABLE STACEY G.C. JERNIGAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

NOW COMES, Plaintiff Robert Yaquinto, Jr., Chapter 7 Trustee of the above-referenced

Debtors (the "Trustee"), and files this *Original Adversary Complaint* against certain creditors and

co-debtors of JRjr33, Inc. ("JRjr33") and The Longaberger Company[1] ("TLC," and collectively

with JRjr33, the "Company" or the "Debtors"), and in support thereof respectfully states as

follows:

## I.  SUMMARY OF TRUSTEE'S CLAIMS

1.     Trustee brings this action to recover for the economic harm suffered by JRjr33,

TLC, and their creditors for certain wrongful conduct of the Debtors' insiders related to broken

promises to loan funds to enable the Company to continue to operate as a going concern.  These

deceptive representations resulted in the procurement of a predatory loan, causing further harm to

creditors due to the unavailability of unencumbered assets to pay claims.  The Trustee, therefore,

seeks a judgment for breach of contract and fraudulent misrepresentation against the Company

insiders, as well as the imposition of equitable marshaling of assets, and avoidance of preferential

and fraudulent transfers against the insider and predatory lender.

## II.  JURISDICTION AND VENUE

2.     The Court has jurisdiction over this adversary proceeding because it involves a core

matter for the causes of action set forth herein, pursuant to 28 U.S.C. §§ 157 and 1334.

3.     Venue for the bankruptcy case and this adversary proceeding is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to 28 U.S.C. § 1391, venue is also appropriate

as Defendants are authorized to and regularly carry out substantial business in this district and the

---

[1] TLC is a wholly-owned subsidiary of JRjr33.

acts and conduct complained of herein took place within this district. Accordingly, this Court also has personal jurisdiction over Defendants.

### III.    **PARTIES**

4.    Plaintiff Robert Yaquinto, Jr. is the duly appointed Chapter 7 Trustee in the underlying bankruptcy cases of *In re JRjr33, Inc.* and *In re The Longaberger Company*, jointly administrated under Case No. 18-32123-SGJ-7. The Trustee is a legal entity separate and distinct from the Debtors, and institutes these claims as a hypothetical judgement lien creditor on behalf of their bankruptcy estates and for the benefit of their creditors.

5.    Defendant JGB Collateral LLC ("JGB Collateral") is a Delaware formed Limited Liability Company and may be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

6.    Defendant JGB Capital, LP ("JGB Capital") is a Delaware formed Limited Partnership and may be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

7.    Defendant JGB (Cayman) Port Ellen Ltd. ("JGB Cayman") is a Limited Company formed in the Cayman Islands and may be served with process through its registered office, Harneys Fiduciary (Cayman) Limited, P.O. Box 10240, 4th Floor, Harbour Place, 103 South Church Street, George Town, Grand Cayman KY1-1002, Cayman Islands.

8.    Defendant JGB Partners, LP ("JGB Partners") is a Delaware Limited Partnership and may be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

9.    JGB Collateral, JGB Capital, JGB Cayman, and JGB Partners are collectively referred to herein as the "Creditors".

10.    Defendant Rochon Capital Partners Lending, Ltd. f/k/a Rochon Capital Partners, Ltd. ("Rochon Capital") is a Texas formed Domestic Partnership.  Rochon Capital is 79% owned by John P. Rochon, 20% by his spouse Donna Rochon, and 1% by the general partner, John Rochon Management, Inc. ("JRMI").  John P. Rochon is the President and sole shareholder of JRMI.  On October 18, 2017, Rochon Capital entered into an agreement with JRjr33 guaranteeing to fund its operations through October 31, 2018.  Rochon Capital may be served with process through its registered agent, John Phillip Rochon at 2400 N. Dallas Parkway, Suite 230, Plano, Texas 75093.

11.    Defendant John P. Rochon ("J. Rochon") is the Company's former Chief Executive Officer, President and Chairman of the Board.  J. Rochon personally guaranteed the Creditors' loans to the Company.  J. Rochon may be served with process at the place where he regularly conducts a business or profession at Richmont Capital Partners V LP, 2400 N. Dallas Parkway, Suite 230, Plano, Texas 75093 or 2950 N. Harwood Street, Suite 2200, Dallas, Texas 75201. Rochon can also be served at his home address located at 17631 Cedar Creek Canyon Drive, Dallas, Texas 75252.

12.    Donna Rochon ("D. Rochon") is J. Rochon's spouse and personally guaranteed the Creditors' loans to the Company.  D. Rochon may be served at her home address located at 17631 Cedar Creek Canyon Drive, Dallas, Texas 75252.

13.    Defendants J. Rochon and D. Rochon are collectively referred to herein as the "Rochons."

## IV.    PROCEDURAL BACKGROUND

14.    On June 29, 2018 (the "Petition Date"), JRjr33 and TLC filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

15.    On September 14, 2018, the Bankruptcy Court entered an order granting joint administration of the Debtors' bankruptcy cases (as jointly administered, the "Bankruptcy Case").

16.    Thereafter, both the United States Trustee and a (purportedly) secured creditor, JGB Collateral, LLC, petitioned the Court to convert the Bankruptcy Case to Chapter 7 on the basis that neither of the Debtors had cash, operations or employees, and therefore had no reasonable likelihood of reorganization. These motions were resolved by agreement of the parties, and the Bankruptcy Case was converted to a chapter 7 proceeding on October 26, 2018. Robert Yaquinto, Jr. was appointed as the chapter 7 trustee.

## V.    FACTUAL BACKGROUND

### A.  By Late 2017, the Company's Ability to Continue as a Going Concern Was Uncertain.

17.    Under J. Rochon's oversight, the Company was plagued by material weaknesses in its financial and compliance controls, including: (i) failure to hire competent accounting personnel to resolve complex accounting issues and institute an adequate plan over the segregation of cash controls; (ii) inadequate due diligence and risk assessment of target businesses from pre-acquisition evaluation to the post-acquisition consolidation and integration of operations; (iii) inadequate reconciliation, review and approval processes for the creation of the Company's financial statements, including for all adjusting journal entries; (iv) failure to account for inventory; (v) failure to institute a control mechanism in order to maintain the appropriate segregation of duties among accounting and finance personnel; and (vi) inadequate controls to

ensure that acquired businesses are integrated with the Company's enterprise resource planning (ERP) system.

18.     Things came to a head in 2017 when the Company was unable to even file a single quarterly report by the SEC's filing deadlines.  The Company's SEC filing delinquencies meant it could not raise capital through equity financing, and it was in default on its debt covenants.  There were also insufficient cash resources to meet operational needs.  As of September 30, 2017, the Company had only $530,000.00 of cash on hand.

**B. Funding Request Agreement Between JRjr33 and Rochon Capital Partners.**

19.     Effective as of October 18, 2017, JRjr33 and Rochon Capital Partners entered into an irrevocable Funding Request Agreement.  The Funding Request Agreement was approved by the Audit Committee of JRjr33's Board of Directors.  A copy of the Funding Request Agreement is attached hereto and incorporate herein by reference as Exhibit A.

20.     Pursuant to the Funding Request Agreement, Rochon Capital Partners agreed as follows:

> **RCP** agrees that, in the event of a cash shortfall at **JRJR,** despite a representation from JRJR's Chief Executive Officer that best efforts have been used to avoid any such cash shortfall, **RCP** will fund all deficits so as to the keep the business operating in the ordinary course through October 31, 2018. This Agreement will terminate on October 31, 2018. **RCP** agrees that this agreement is irrevocable prior to that date.

21.     JRjr33 had a steady cash shortfall during this time and was unable to meet its current liabilities.  The Company had a history of not paying its vendors and then trying to negotiate a lower amount, and even fell behind on remitting sales taxes.

22.     Therefore, the Company's evaluation as a going concern was heavily dependent upon the funding set forth in the Funding Request Agreement.

23.     However, Rochon Capital failed to perform under the Funding Request Agreement, and the Company fell further and further behind on payables.  By the time the Company filed bankruptcy, JRjr33 and TLC had $0.00 in their bank accounts and they reported $21,860,003.38 and $23,364,587.53 in total liabilities, respectively.

## C. Senior Secured Guaranteed Convertible Term Loans Between JGB and JRjr33 and Guaranteed by the Rochons.

24.     The day following the effective date of the Funding Request Agreement between JRjr33 and Rochon Capital, the Company and the Creditors entered into a Securities Purchase Agreement ("Purchase Agreement"), characterized as a "secured loan transaction" in which the Creditors purchased debt securities of JRJR33.

25.     In connection with the Purchase Agreement, JRjr33 executed the following documents (the "Notes"), among others (collectively, with the Purchase Agreement, the "Loan Documents"):

a.  The *14% Original Issue Discount Senior Secured Guaranteed Convertible Term Loan Note Due October 19, 2020* dated October 19, 2017 executed in favor of JGB Partners in the original principal amount of $2,631,579.00;

b.  The *14% Original Issue Discount Senior Secured Guaranteed Convertible Term Loan Note Due October 19, 2020* dated October 19, 2017 executed in favor of JGB Cayman in the original principal amount of $1,842,105.30;

c.  The *14% Original Issue Discount Senior Secured Guaranteed Convertible Term Loan Note Due October 19, 2020* dated October 19, 2017 executed in favor of JGB Capital in the original principal amount of $789,473.70;

    d. The *Subsidiary Guarantee* dated October 19, 2017 executed in favor of the Creditors, in which the Notes were guaranteed by 15 entities, all "direct or indirect" subsidiaries of JRjr33;

    e. A *Personal Guarantee* dated October 19, 2017 executed in favor of the Creditors, in which the Notes were guaranteed by the Rochons; and

    f. The *Security Agreement* dated October 19, 2017 granting JGB Collateral a lien over all of debtor's personal property.

26.    Under the Loan Documents, the Creditors loaned the Company $5,263,158 in exchange for convertible promissory debentures and warrants with an October 19, 2020 maturity date. In exchange for the Notes, the Creditors also received a security interest and/or lien upon substantially all of the Company's assets and personal guaranties from the Rochons.

27.    The Loans are "Death Spiral" loans. Also referred to as vulture capitalism, PIPES, toxic convertibles, or toxic warrants, these are a type of private investment in public equity whereby the investor extends a loan to the company in exchange for convertible debt. A typical death spiral loan does not state a predetermined number of shares, but instead allows for a flexible conversion rate which is some fractional percentage of the market rate at the time of conversion. Thus, the lower the price, the more shares are necessary to be issued at the conversion. This opens the door for the investor to benefit by manipulating the price downward by shorting the stock. The conversion then causes a dilution of the stock, driving down the price in a death spiral.

28.    "Death spiral" lenders often operate with a complex holding structure which allows them to shift income from one subsidiary to another, including to tax-haven offshore locales like the Cayman Islands. This is called "frustration of jurisdiction and venue" and may be a warning sign of fraud due to ill-gotten gains being placed beyond the reach of regulators and courts.

29.    As a general business strategy, the Creditors target distressed companies that are in, near, or emerging from bankruptcy.  Their target borrowers are in an unstable financial position, often with management and internal control deficiencies.  The Company fit the bill perfectly.

30.    In total, the Company paid the Creditors $446,459.53 and defaulted on the balance of the Notes.  The payments to the Creditors are itemized as follows (collectively, the "Creditor Transfers"):

| Origin Acct. No. | Origin Accountholder: | Date | Form of Transfer | Transferee | Amount |
|---|---|---|---|---|---|
| 3885 | CVSL Inc JRJR Networks | 09/13/17 | OUT WT E-ACCESS REF 20170913F2QCZ60C002142 BNF JGB Management Inc | JGB Management Inc | (25,000.00) |
| 9284 | The Longaberger Company Operating Accounts | 10/30/17 | OUT WT E-ACCESS REF 20171030F2QCZ60C001517 BNF JGB CAPITAL LP | JGB CAPITAL LP | (3,991.23) |
| 9284 | The Longaberger Company Operating Accounts | 10/30/17 | OUT WT E-ACCESS REF 20171030F2QCZ60C000483 BNF JGB (CAYMAN) PORT | JGB (CAYMAN) PORT | (9,312.87) |
| 9284 | The Longaberger Company Operating Accounts | 10/30/17 | OUT WT E-ACCESS REF 20171030F2QCZ60C001516 BNF JGB CAPITAL OFFSHO | JGB CAPITAL OFFSHO | (13,304.09) |
| 9284 | The Longaberger Company Operating Accounts | 11/30/17 | OUT WT E-ACCESS REF 20171130F2QCZ60C002379 BNF JGB CAPITAL LP | JGB CAPITAL LP | (9,210.53) |
| 9284 | The Longaberger Company Operating Accounts | 11/30/17 | OUT WT E-ACCESS REF 20171130F2QCZ60C002719 BNF JGB (CAYMAN) PORT | JGB (CAYMAN) PORT | (21,491.23) |
| 9284 | The Longaberger Company Operating Accounts | 11/30/17 | OUT WT E-ACCESS REF 20171130F2QCZ60C002380 BNF JGB PARTNERS LP | JGB PARTNERS LP | (30,701.76) |

| 4726 | JRJR33 Inc | 12/29/17 | WIRE TRANSFER FROST BANK WIRE OUT 07301 | JGB Capital LP | (9,517.54) |
| 9284 | The Longaberger Company Operating Accounts | 12/29/17 | OUT WT E-ACCESS REF 20171229F2QCZ60C004234 BNF JGB (CAYMAN) PORT | JGB (CAYMAN) PORT | (22,207.60) |
| 3885 | CVSL Inc JRJR Networks | 01/31/18 | OUT WT E-ACCESS REF 20180131F2QCZ60C003875 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (22,207.60) |
| 3885 | CVSL Inc JRJR Networks | 02/28/18 | OUT WT E-ACCESS REF 20180228F2QCZ60C004079 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (20,058.48) |
| 3885 | CVSL Inc JRJR Networks | 04/02/18 | OUT WT E-ACCESS REF 20180402F2QCZ60C002327 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (22,207.60) |
| 9284 | The Longaberger Company Operating Account | 04/24/18 | AST OUTGOING WIRE XFR REF 20180424F2QCZ60C000727 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (276.00) |
| 0738 | The Longaberger Company Order Management Depository | 04/27/18 | AST OUTGOING WIRE XFR REF 20180427F2QCZ60C000875 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (106,457.00) |
| 0738 | The Longaberger Company Order Management Depository | 04/30/18 | AST OUTGOING WIRE XFR REF 20180430F2QCZ60C004792 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (29,792.00) |
| 0738 | The Longaberger Company Order Management Depository | 05/1/18 | AST OUTGOING WIRE XFR REF 20180501F2QCZ60C001185 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (15,313.00) |
| 7473 | The Longaberger Company Accounts Payable | 05/02/18 | AST OUTGOING WIRE XFR REF 20180502F2QCZ60C000404 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (2,676.00) |

| 0738 | The Longaberger Company Order Management Depository | 05/2/18 | AST OUTGOING WIRE XFR REF 20180502F2QCZ60C000402 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (57,637.00) |
| 0738 | The Longaberger Company Order Management Depository | 05/3/18 | AST OUTGOING WIRE XFR REF 20180503F2QCZ60C001142 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (8,770.00) |
| 0738 | The Longaberger Company Order Management Depository | 05/4/18 | AST OUTGOING WIRE XFR REF 20180504F2QCZ60C000951 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (4,550.00) |
| 9284 | The Longaberger Company Operating Account | 05/30/18 | AST OUTGOING WIRE XFR REF 20180530F2QCZ60C002131 BNF JGB (CAYMAN) PORT | JGB (Cayman) Port Ellen Ltd | (11,778.00) |
| **TOTAL PAID TO CREDITORS** | | | | | **($446,459.53)** |

31.     On April 17, 2018, the Creditors notified the Company that it was in default under the terms of the Loan Documents, and signaled their intention to pursue all collection remedies available to it by law under the Loan Documents. The Company subsequently filed the Bankruptcy Case.

32.     On October 24, 2018, the Creditors filed their proofs of claim in the Bankruptcy Case asserting a secured claim with a blanket lien on all assets for money loaned in the total amount of $5,302,608.31, which is comprised of $5,201,934.62 in principle, $72,537.27 in interest, and $28,136.42 in legal fees (the "JGB Claim").

33.     On September 12, 2019, in a case styled *JGB Collateral, LLC, as Agent v. John Rochon et al.*, Index No. 654735/2018, the Supreme Court of New York awarded the Creditors

summary judgement in the amount of $6,357,452.09 against the Rochons.  That case, and eventual judgement, was a collection case based on the Rochons' guarantor liability for the Notes.

**D. The Company Should Have Had the Ability to Operate as a Going Concern Through October 2018.**

34.     By 2017, there was a very real risk that the Company would not be able to continue to operate as a going concern.  The Company's auditors concluded that there was substantial doubt about the Company's ability to continue as a going concern based on its current and cumulative operating losses, negative working capital, and debt defaults.  In response, J. Rochon arranged for the Funding Request Agreement with Rochon Capital.

35.     The Company's auditors evaluated the additional financial support that would be available from Rochon Capital as well as the Rochons personally, and determined that the Company would have access to sufficient liquid funds from Rochon Capital and the Rochons, thus alleviating the  substantial doubt concerning the Company's ability to continue as a going concern through October 31, 2018.

36.     Within a month after entering into the Funding Request Agreement, however, it became clear from internal Company communications from J. Rochon that it was never his intention for Rochon Capital to fund cash shortages, and J. Rochon began planning for the Company to be delisted and "go dark."

**VI.   CONDITIONS PRECEDENT**

37.     All conditions precedent to bring this suit have been performed or have occurred. Specifically, the Trustee brings this suit based on reasonable diligence in the circumstances of the Bankruptcy Case and taking into account Defendants' known or reasonably knowable affirmative defenses, including those under Section 547(c).

38.    During the course of this proceeding, Trustee may learn (through discovery or otherwise) of additional actionable conduct and/or avoidable transfers made to the Creditors, Rochon Capital, or the Rochons.  Likewise, the Trustee may learn of additional information concerning Defendants' affirmative defenses.  It is Trustee's intention to avoid and recover all preferential and fraudulent transfers made by JRjr33 and TLC of any interest of the Debtors in property and to or for the benefit of Defendants or any other transferee.  Trustee reserves his right to amend this original Complaint to include: (i) further information regarding the avoidable payments, (ii) additional avoidable payment, (iii) modifications of and/or revision to Defendants' names, (iv) additional defendants, and/or (v) additional causes of action (i.e., but not exclusively, 11 U.S.C. § 542, § 544, § 545, § 548 and § 549) (collectively, the "Amendments"), that may become known to Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## VII.    CAUSES OF ACTION

### A.  Count 1 – Breach of Funding Request Agreement Against Rochon Capital.

39.    The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

40.    Rochon Capital breached the Funding Request Agreement by failing to advance funds to the Company to cover cash shortfalls for ordinary operating expenses.

41.    To the extent that the Company failed to request Rochon Capital's performance under the Funding Request Agreement, it was because of J. Rochon's self-interested motivations in not wanting his investment company to fund the Company.

42.     The failure of Rochon Capital to fund the Company's cash shortfalls was a material breach because the Company was not able to continue to operate as a going concern and had to file bankruptcy.

43.     As a direct and proximate consequence of this breach, the Company suffered irreparable economic losses that forced it into bankruptcy where creditors have filed proofs of claim against JRjr33, Inc. in the amount of $25,067,334.58 and against The Longaberger Company in the amount of $18,662,959.27.

44.     Because of Rochon Capital's breach, the Trustee was required to retain attorneys to prosecute this action.  Pursuant to Section 38.001(8) of the Texas Civil Practice and Remedies Code, the Trustee seeks his reasonable and necessary attorneys' fees.

**B.  Count 2 – Negligent Misrepresentation Against Rochon Capital and J. Rochon.**

45.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

46.     Rochon Capital and J. Rochon are liable for negligent misrepresentation.

47.     To secure the Company's auditor's going concern opinion, Rochon Capital and J. Rochon negligently represented that Rochon Capital would provide funding under the Funding Request Agreement and that the Rochons' personal liquid assets would otherwise be available.

48.     These representations were made in the course of the Company's, J. Rochon's and Rochon Capital's business, or in a transaction in which they had a pecuniary interest.

49.     The Funding Request Agreement and the auditor's "going concern" evaluation was relied on by the Company and the Creditors, and used as a material basis to qualify the Company for the Notes from the Creditors.

50.     These representations were intended to guide the Company in obtaining funding from the Creditors, but J. Rochon and Rochon Capital did not exercise reasonable care or competence in communicating the information, because within a month, J. Rochon began planning for the Company to fail and Rochon Capital did not fund cash shortfalls to ensure that the Company continued to operate as a going concern as promised.

51.     As a direct and proximate consequence of these misrepresentations, the Company suffered irreparable economic losses that forced it into bankruptcy where creditors have filed proofs of claim against JRjr33, Inc. in the amount of $25,067,334.58 and against The Longaberger Company in the amount of $18,662,959.27.

### C. Count 3 – Marshaling of Assets Against the Creditors and the Rochons

52.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

53.     The Trustee, as of the Petition Date, has the rights and powers of a judgment lien creditor, a holder of an unsatisfied execution, and a bona fide purchaser of real property pursuant to 11 U.S.C. § 544(a).

54.     The Trustee holds a lien on all property of the Debtors on the Petition Date that is junior to the valid and properly perfected liens of secured creditors as of the Petition Date.

55.     The Creditors have additional property and collateral, which is not property of the Debtors' estates, against which they may seek to satisfy the JGB Claim.  This additional property and collateral is owned by the Rochons, who are co-debtors on the Notes by virtue of their personal guaranties.

56.     The equitable doctrine of marshaling may be applied for the benefit of a junior lien creditor when (a) the junior lien creditor and senior lien creditor are dealing with a common debtor

who owns two or more properties, (b) the senior lien creditor has a lien on two or more of the debtors' properties, and (c) the junior lien creditor has a junior lien on fewer of the properties than does the senior lien creditor.

57.    The marshaling of claims against assets owned by insiders of bankruptcy debtors is appropriate where equity and justice demand such marshaling. The Rochons qualify as "insiders" of JRjr33 and TLC due to their positions of management and control, or in the alternative, their sufficiently close relationship and influence such that any dealings between them were not at arm's length.

58.    In this case, equity and justice demand the marshaling of assets of the Rochons. Such equity considerations include: (a) J. Rochon's misrepresentations concerning Rochon Capital's intent to perform under the Funding Request Agreement; (b) the Company's evaluation as a going concern was heavily dependent upon the funding set forth in the Funding Request Agreement, without which it would not have obtained the funding from the Creditors; (c) the Company's auditors relied on the personal liquid assets of the Rochons for their conclusion that the Company would continue as a going concern through October 31, 2018; (d) J. Rochon's mismanagement of the Company caused it to be late on its SEC filings, which meant it was prohibited from raising capital through issuance of public securities, thereby forcing the Company to look to predatory lenders; and (e) the Creditors had notice of the Company's insolvency and internal governance and compliance issues, and specifically targeted it for that reason, so they knew there was a reasonable likelihood of having to look to the Rochons' personal assets for payment.

59.    There are few unencumbered assets in these Bankruptcy Cases which may be liquidated for payment of non-insider, unsecured creditors.

60.     In stark contrast, the Creditors have recourse against assets owned by the Rochons which may be used to satisfy the JGB Claim in full.

61.     The Trustee requests entry of a judgment finding that the Rochons' assets may be marshaled for the benefit of the Debtors' bankruptcy estate, and that the Creditors be required to recover on the JGB Claim solely from the Rochons.

**D. Count 4 – Avoidance and Recovery of 1-Year Insider Preferences Against Rochon Capital and Rochons Pursuant to 11 U.S.C. §§ 544, 547(b) and 550(a), and Applicable State Fraudulent Transfer Law (Tex. Bus. & Com. Code §§ 24.006(b), and 24.008).**

62.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

63.     Rochon Capital and the Rochons qualify as "insiders" of JRjr33 and TLC due to their positions of management and control, or in the alternative, their sufficiently close relationship and influence such that any dealings between them were not at arm's length.

64.     Between June 29, 2017 and the Petition Date (the "Insider Preference Period"), the Creditors received the Creditor Transfers, itemized above, in the total amount of $446,459.53.

65.     These payments made during the Insider Preference Period were made for the benefit of Rochon Capital and the Rochons in so far as they extinguished Rochon Capital's liability to the Company to fund the payments under the Funding Request Agreement and the Rochons' liability under their personal guaranties to the Creditors.

66.     Each of the Creditor Transfers was made to or for the benefit of a "creditor." The Creditors were creditors by virtue of the Loans. Rochon Capital was a creditor by virtue of the Funding Request Agreement. The Rochons were creditors by virtue of their shared liability with the Company on the Loans from the Creditors.

67.     Each of the Creditor Transfers was made on account of an antecedent "debt" owed by the Company before such Creditors Transfers were made.

68.     Each of the Creditor Transfers was made while JRjr33 and TLC were insolvent.

69.     Each transfer was made for the benefit of an insider of JRjr33 and TLC, within one year of the Petition Date.

70.     Had the Creditor Transfers not been made by the Debtors, Rochon Capital and the Rochons would have been required to fund the Creditor Transfers themselves under the Funding Request Agreement and the personal guaranties.  Therefore, Rochon Capital and the Rochons received a greater benefit from the Debtors' payment of the Creditor Transfers than they would receive if they had paid the Creditor Transfers themselves and pursued a claim in the Bankruptcy Case for contribution.

71.     Rochon Capital and the Rochons are the initial beneficiaries of the Creditor Transfers.

72.     As a result of these circumstances, the Creditor Transfers should be avoided under 11 U.S.C. §§ 544 and 547, and the Trustee entitled to recover the amount of the Creditor Transfers against Rochon Capital and the Rochons pursuant to 11 U.S.C. § 550(a).

**E.  Count 5 – Avoidance and Recovery of 90-Day Preferences Against the Creditors Pursuant to 11 U.S.C. §§ 544, 547(b) and 550(a).**

73.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

74.     Between March 31, 2020 and the Petition Date (the "Preference Period"), the Creditors received a portion of the Creditor Transfers, itemized above, in the total amount of $259,456.60 (the "90-day Creditor Transfers").

75.     Each of the 90-Day Creditor Transfers was made to or for the benefit of a "creditor." The Creditors were creditors by virtue of the Loans.

76.     Each of the 90-Day Creditor Transfers was made on account of an antecedent "debt" owed by the Company before such Creditors Transfers were made.

77.     Each of the 90-Day Creditor Transfers was made while JRjr33 and TLC were insolvent.

78.     Each of the 90-Day Creditor Transfers was made to an insider within 90 days the Petition Date.

79.     The Creditors received more than they would have were this case under Chapter 7 of the Bankruptcy Code, the 90-Day Creditor Transfers not been made, and the Creditors received payments on their debts to the extent provided by the provisions the Bankruptcy Code.

80.     The Creditors are the initial transferees of the of the 90-Day Creditor Transfers.

81.     As a result of these circumstances, the Creditor Transfers should be avoided under 11 U.S.C. § 547, and the Trustee entitled to recover the amount of the Creditor Transfers against Rochon Capital and the Rochons pursuant to 11 U.S.C. § 550(a).

**F.  Count 6 – Avoidance and Recovery of Fraudulent Obligation Against the Creditors Pursuant to 11 U.S.C. §§ 544, 548(a)(1)(A), and Applicable State Fraudulent Transfer Law (Tex. Bus. & Com. Code §§ 24.005(a)(1)).**

82.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

83.     Between June 29, 2016 and the Petition Date (the "Fraudulent Transfer Period"), the Creditors received a blanket lien on all of the Debtors' assets (the "Lien").  The Lien constitutes a transfer of an interest of the Debtors in property as it pledged all of the Debtors' assets to the Creditors as security for the Notes.

84. The Lien was granted by the Company with the intent to hinder, delay or defraud an entity to which the Company was or became indebted on or after the date that such obligation was incurred.

85. The badges of fraud include:

a. The Lien was incurred by the Company in connection with Rochon Capital's and J. Rochon's misrepresentations concerning their intent to perform under the Funding Request Agreement.

b. The Lien benefitted Company insiders because the pledge of Company assets shielded Rochon Capital and the Rochons from performing under the Funding Request Agreement and personal guaranties.

c. The Lien was on substantially all of the Company's assets; and

d. The Company was insolvent.

86. The Creditors are the initial transferees of the Lien.

87. The Creditors were aware of the Company's insolvency and internal governance and compliance issues, and specifically targeted it for that reason.

88. As a result of these circumstances, the Lien should be avoided under 11 U.S.C. §§ 544 and 548.

G. **Count 7 – Determination of the Extent, Validity and Priority of Liens and Other Interests of Creditors' in Property of the Estate.**

89. The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

90. Pursuant to 11 U.S.C §§ 506 and 507 and Fed. R. Bankr. P. 7001, the Trustee seeks a determination of the extent, validity and priority of liens or other interests of the Creditors,

including to the extent of any setoff, recoupment, and/or damages awarded by the Court as a result of the facts set forth hereinabove and in Counts 1-6 of this Complaint.

91.     The Creditors claim to hold a purported secured interest in property presumed to be property of JRjr33's and TLC's bankruptcy estates.  The Trustee disputes the extent, validity and priority of the Creditors' purported lien for reasons that include, but that are not necessarily limited to, the following: (i) the Creditors' lien is avoidable because it was obtained as the result of a fraudulent transfer as alleged in Count 6 above; (ii) the Creditors' lien is subject to the application of the marshaling doctrine as alleged in Count 3; and (v) any other grounds as may be learned through discovery.

92.     Based upon the facts and circumstances alleged above, the Trustee is uncertain as to the rights of the bankruptcy estates with regard to the Creditors' claimed interests.  As a result of these circumstances, the Trustee respectfully requests that the Court (i) determine the extent, validity and priority of the lien, security interest or other claims that the Creditors may have pursuant to 11 U.S.C. §§ 506 and 507; and (ii) granting any other relief the Court deems appropriate.

### H.  Count 8 – Disallowance of All Claims Pursuant to 11 U.S.C. § 502(d).

93.     The Trustee incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

94.     Defendants are transferees of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

95.     Defendants have not paid the amount of the Creditor Transfers and the 90-Day Creditor Transfers, or turned over such property, for which Defendants are liable under 11 U.S.C. § 550.

96.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendants and/or their assignee, against the chapter 7 estates of JRjr33 or TLC or the Trustee must be disallowed until such time as Defendants pay to the Trustee an amount equal to the aggregate amount of the Insider Preference Transfers and/or the Fraudulent Transfers, plus interest thereon and costs.

## VIII.   <u>PRAYER</u>

WHEREFORE, the Trustee respectfully requests that this Court enter judgment against the Defendants, and award the Trustee: (i) economic damages suffered by the bankruptcy estates of JRjr33 and TLC for Rochon Capital's breach of the Funding Request Agreement; (ii) economic damages suffered by the bankruptcy estates of JRjr33 and TLC for J. Rochon's and Rochon Capital's negligent misrepresentations concerning the Company's ability to operate as a going concern; (iii) judgment that the Rochons' assets may be marshaled for the benefit of the Debtors' bankruptcy estate, and that the Creditors be required to recover on the JGB Claim solely from the Rochons; (iv) avoidance and recovery on Chapter 5 claims; (iv) interest at the maximum legal rate; (v) costs of court, and fees and expenses as permitted; and (vi) and such other and further relief as this Court may deem just and proper.

Dated: June 26, 2020.

Respectfully submitted,

ROCHELLE McCULLOUGH, LLP

By: */s/ Kathryn G. Reid*
    Kevin D. McCullough
    State Bar No.  00788005
    Kathryn G. Reid
    State Bar No.  24068126
    Shannon S. Thomas
    State Bar No. 24088442
    325 N. St. Paul Street, Suite 4500
    Dallas, Texas 75201
    Telephone:  214-953-0182
    Facsimile:  214-953-0185
    Email: kdm@romclaw.com
    Email: kreid@romclaw.com
    Email: sthomas@romclaw.com

GENERAL BANKRUPTCY COUNSEL
FOR ROBERT YAQUINTO, JR.,
CHAPTER 7 TRUSTEE