

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed November 30, 2020**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Jointly Administered Under** |
| **JRJR33, INC. and** | § | **CASE NO. 18-32123-SGJ-7** |
| **THE LONGABERGER COMPANY,** | § | **(CHAPTER 7)** |
| DEBTORS. | § | |
| _____ | § | |
| **ROBERT YAQUINTO, JR.,** | § | |
| *Chapter 7 Trustee* | § | **ADVERSARY NO. 20-03086** |
| PLAINTIFF, | § | **(CIV. ACTION #3:20-CV-02847-B)** |
| | § | |
| **VS.** | § | |
| | § | |
| **JGB COLLATERAL LLC,** *et al.*, | § | |
| DEFENDANTS. | § | |

### REPORT AND RECOMMENDATION TO DISTRICT COURT PROPOSING THAT IT DENY MOTION TO WITHDRAW THE REFERENCE

# Table of Contents

I.     INTRODUCTION ......................................................................................... 3

II.    NATURE OF THE ADVERSARY PROCEEDING ..................................... 5

    A.    The Parties. .......................................................................... 5

          1.    *The Plaintiff: Chapter 7 Trustee, Robert Yaquinto Jr.* ............................. 5

          2.    *The Four Non-Insider Defendants (Third-Party Lending Group)* ............. 5

          3.    *The Three Insider Defendants (Rochon Defendants)* ............................... 6

    B.    The Procedural History. ......................................................... 6

    C.    The Theories, Claims, and Relief Urged in the Trustee's Complaint. .................. 7

    D.    The Motion to Withdraw the Reference and Response and Reply. ...................... 10

III.    A MIXTURE OF CORE AND NONCORE CLAIMS ARE INVOLVED, BUT CORE CLAIMS PREDOMINATE ......................................................... 13

IV.    JURY TRIAL RIGHTS AND DEMANDS. ........................................... 16

V.    PENDING MATTERS ............................................................... 17

VI.    RECOMMENDATION ............................................................... 18

## I.    INTRODUCTION

The above-referenced Adversary Proceeding was filed in connection with the bankruptcy cases of JRjr33, Inc. ("JR, Inc.") and The Longaberger Company ("TLC") (together, the "Debtors").

JR, Inc. was a publicly held Florida corporation that functioned as a holding company for TLC and various other subsidiaries. Both JR, Inc. and TLC filed voluntary Chapter 11 petitions on June 29, 2018.[1] TLC was an operating company, engaged in the business of selling premium hand-crafted woven baskets (*i.e.,* Longaberger baskets) made in Dresden, Ohio, as well as other home products—mostly sold through a nationwide network of independent sales representatives. Interestingly, at one time, the Debtors were even headquartered in a unique building in Newark, Ohio that was designed in the shape of TLC's iconic baskets (see image):



---

[1] Case No. 18-32123, Dkt. 1; Case No. 18-32124, Dkt. 1.

The two Debtors' bankruptcy cases were jointly administered under Case Number 18-32123[2] and were later converted to Chapter 7 cases on October 26, 2018.[3] Robert Yaquinto, Jr. was thereafter appointed as the Chapter 7 Trustee over the jointly administered bankruptcy cases. Proofs of claim in the aggregate amount of $25,067,334.58 have been filed against JR, Inc., and proofs of claim in the aggregate amount of $18,662,959.27 have been filed against TLC. Substantially all the assets of the Debtors have been sold, and the Trustee now holds cash proceeds of the sale.

The Trustee recently brought the above-referenced Adversary Proceeding against two separate sets of defendants: (a) certain *insiders* of the Debtors; and (b) an unrelated third-party lender group. The *insider defendants* are the Debtors' former Chairman and Chief Executive Officer ("CEO"), his wife, and a separate non-debtor company that they both owned. The Trustee alleges that the CEO caused the separate non-debtor company to enter into an irrevocable agreement to lend funds to the Debtors to cover liquidity shortfalls, and then such agreement was allegedly promptly breached—*i.e.,* no funding was provided as promised. With regard to the second set of defendants—a *non-insider third-party lending group*—the Trustee has argued that the conduct of the *insider defendants* (in breaching their own funding promise) caused the Debtors to seek out and obtain alternative funding, in the form of highly unfavorable "death spiral" secured notes, from this third-party lending group. These secured notes were, essentially, "predatory" loans, causing harm to the Debtors and, derivatively, the Debtors' other creditors. The Trustee seeks a judgment for: (a) breach of contract and fraudulent misrepresentation against the insider defendants; and (b) avoidance of preferential and fraudulent transfers against the insider

---

[2] Case No. 18-32123, Dkt. 10, 54.
[3] Case No. 18-32123, Dkt. 69.

defendants and the third-party lending group. Additionally, the Trustee seeks the imposition of the equitable remedy of marshaling of assets (*i.e.,* a remedy that would require the third-party lender group to look to the assets of the insider defendants for repayment, rather than to the assets of the Debtors).

## II.   NATURE OF THE ADVERSARY PROCEEDING

### A. The Parties.

Specifically, there are eight parties in this Adversary Proceeding—one Plaintiff and seven Defendants (defined below).

#### 1.   *The Plaintiff: Chapter 7 Trustee, Robert Yaquinto Jr.*

The Trustee filed his *Trustee's Original Adversary Complaint* on June 26, 2020.[4] The Trustee is a legal entity separate and distinct from the Debtors, and institutes these claims as a hypothetical lien creditor on behalf of the bankruptcy estates.[5]

#### 2.   *The Four Non-Insider Defendants (Third-Party Lending Group)*

The non-insider third-party lending group consists of four entities:  JGB Collateral LLC ("JGB Collateral"); JGB Capital, LP ("JGB Capital"); JGB (Cayman) Port Ellen Ltd. ("JGB Cayman"); and JGB Partners, LP ("JGB Partners").  JGB Collateral, JGB Capital, JGB Cayman, and JGB Partners are collectively referred to herein as the "JGB Defendants" or the "Third-Party Lending Group." Notably, one of the JGB Defendants—JGB Collateral, acting as an agent for the other JGB Defendants—filed proofs of claim on behalf of all the JGB Defendants[6] and has appeared in the underlying bankruptcy cases of the Debtors.

---

[4] Adversary Case No. 20-03086, Dkt. 1.
[5] *See* 11 U.S.C. § 544.
[6] *See* POC No. 31 in the JR, Inc. case and POC No. 46 in the TLC case.

### 3. *The Three Insider Defendants (Rochon Defendants)*

The "Insider Defendants," sometimes referred to as the "Rochon Defendants," consist of two individuals and one partnership. The individuals are John P. Rochon, the former CEO and Chairman of the Debtors, and his spouse, Donna Rochon. The partnership Defendant is Rochon Capital Partners Lending, Ltd. ("Rochon Capital"), which is 79% owned by John P. Rochon, 20% by Donna Rochon, and 1% by a general partner, John Rochon Management, Inc., of which John P. Rochon is the president and sole shareholder. None of the Rochon Defendants filed proofs of claim in these bankruptcy cases.

## B. The Procedural History.

As noted above, the Trustee filed his *Original Adversary Complaint*, on June 26, 2020, initiating this Adversary Proceeding. All Defendants were served with summonses on June 29, 2020 and, after the Trustee conferred with counsel for the Defendants, he agreed to extend the time for all of the Defendants to file an answer or response by an additional 30 days, to a deadline of August 28, 2020.[7] Subsequently, the Trustee filed a motion to further extend the time to respond for the Rochon Defendants, creating a new deadline of October 27, 2020.[8] The four JGB Defendants filed a Rule 12(b)(6) *Motion to Dismiss*[9] on August 28, 2020. **The Rochon Defendants have not filed an Answer or otherwise responded in the Adversary Proceeding, as of November 27, 2020.**

---

[7] Adversary Case No. 20-03086, Dkt. 5.
[8] Adversary Case No. 20-03086, Dkt. 9.
[9] Adversary Case No. 20-03086, Dkt. 8.

**C. The Theories, Claims, and Relief Urged in the Trustee's Complaint.**

As described above, there are two sets of Defendants in this Adversary Proceeding whose complained-of actions are distinct but significantly overlapping. It is fair to say that the claims all derive from a common nucleus of operative facts. Those facts are that, on October 18, 2017, one of the Insider Defendants—the partnership known as Rochon Capital—entered into an irrevocable agreement with JR, Inc., entitled "Funding Request Agreement." Pursuant to such agreement— and because of insufficient cash resources that threatened JR, Inc.'s ability to function as a going concern—Rochon Capital agreed to fund JR, Inc. through October 31, 2018. Despite this agreement, the very next day, on October 19, 2017, the Debtors (who had the very same control person as Rochon Capital did—*i.e.,* John P. Rochon) entered into a Securities Purchase Agreement, characterized as a "secured loan transaction," in which each of the Debtors, Rochon Capital, and the JGB Defendants agreed that the JGB Defendants would purchase debt securities of JR, Inc. under very onerous terms. Pursuant to this Securities Purchase Agreement, JR, Inc. executed three fixed rate (14%) senior, secured, convertible notes in favor of three of the JGB Defendants. All in all, the JGB Defendants collectively loaned $5,263,158 to the Debtors in exchange for JGB Collateral receiving a security interest in substantially all of the Debtors' assets. John P. Rochon and Donna Rochon each personally guaranteed all of the loans of the JGB Defendants.

The *Trustee's Complaint* includes eight counts. The following chart summarizes the counts, against whom each is asserted, and the bankruptcy court's conclusions as to their statutory "core" or "noncore" nature:

| Count No. | Claim | Defendants | | Claim Classification | |
|---|---|---|---|---|---|
| | | Rochon Defendants | JGB Defendants | Core | Noncore |
| 1 | Breach of Contract (*i.e.*, the Funding Request Agreement) | X[10] | | | X |
| 2 | Negligent Misrepresentation | X[11] | | | X |
| 3 | Marshaling of Assets (articulated as a claim, but this is an equitable remedy) | X[12] | X | N/A | N/A[13] |
| 4 | Avoidance and Recovery of One-Year Insider Preferences, pursuant to Bankruptcy Code §§ 547 & 550 | X | | X | |
| 5 | Avoidance and Recovery of 90-Day Preferences, pursuant to Bankruptcy Code §§ 547 & 550 | | X | X | |
| 6 | Avoidance and Recovery of Fraudulent Obligation, pursuant to either Bankruptcy Code § 548 or § 544 and TUFTA[14] | | X | X | |
| 7 | Determination of the Extent, Validity, and Priority of Liens and Other Interests, pursuant to Bankruptcy Code § 506 | | X | X | |
| 8 | Disallowance of Claims, pursuant to Bankruptcy Code § 502(d) | | X | X | |

---

[10] Specifically, this Claim is asserted against only Rochon Capital.

[11] Specifically, this Claim is asserted against two of the Rochon Defendants:  Rochon Capital and John P. Rochon.

[12] Specifically, marshaling is asserted against two of the Rochon Defendants (who guaranteed the JGB Defendants' debt): John P. and Donna Rochon.

[13] Marshaling is an equitable ***remedy***, technically not a ***claim*** or ***cause of action***.  *See, e.g., In re El Paso Truck Ctr., Inc.*, 129 B.R. 109, 113 (Bankr. W.D. Tex. 1991) ("[M]arshalling [sic] is an equitable remedy.").  In any event, here, the marshaling request is specifically directed against the JGB Defendants but was also brought against John P. and Donna Rochon also, for the purpose of providing notice to the Rochons, allowing them to appear and be heard on a requested remedy that could force the JGB Defendants to satisfy their claims first against the Rochons' assets, as guarantors.

[14] TEX. BUS. & COM. CODE §24.005(a)(1).

To be clear, all of the claims asserted by the Trustee stem from the above-described transactions implemented in October 2017—essentially, asserting that: (a) the Rochon Defendants failed to properly fund the Debtors as promised in the Funding Request Agreement; (b) the JGB Defendants' lending obligations created thereafter constituted fraudulent transfers (the Trustee arguing that the JGB Defendants acquired the blanket lien on the Debtors' assets through the misrepresentations, and to the benefit of, the Rochon Defendants); and (c) the payments thereafter made by the Debtors on account of the antecedent loan debt owed to the JGB Defendants (*i.e.,* $446,459.53 was transferred by the Debtors to the JGB Defendants within one year of the bankruptcy Petition Date, of which $259,456.60 was transferred within the 90-day lookback period for non-insider preference payments) amounted to preferences that benefited both the JGB Defendants as well as the Rochon Defendants (because the payments helped extinguish part of the liability for the personal guaranties of John P. and Donna Rochon and the obligations of Rochon Capital that were contemplated under the Funding Request Agreement).

The fraudulent transfer and insider preference actions against all Defendants are brought under, both, the relevant Bankruptcy Code and Texas Uniform Fraudulent Transfer Act ("TUFTA") sections.[15]

Finally, the Trustee seeks to invoke the rarely used equitable remedy of marshaling. Specifically, the Trustee seeks an order requiring the JGB Defendants to look to the assets of the guarantors of the Debtors' loan obligations (*i.e.,* John P. and Donna Rochon), to satisfy the debt that the JGB Defendants are owed on their loans, rather than the assets of the Debtors.

The Trustee seeks a judgment that:

---

[15] *See* 11 U.S.C. §§ 544, 547(b), 548(a)(1)(A), 550(a); *See also* Tex. Bus. & Com. Code §§ 24.005(a)(1), 24.006(b), 24.008.

i.    Avoids the blanket security interest granted to JGB Collateral;

ii.   Recoups transfers made from the Debtors to or for the benefit of the JGB Defendants and Rochon Defendants, leading up to the Petition Date; and

iii.  Compels the JGB Defendants to look to John and Donna Rochon to satisfy their debts under the doctrine of marshaling.

**D. The Motion to Withdraw the Reference and Response and Reply.**

The JGB Defendants—***with the exception of JGB Collateral***—on August 28, 2020, filed their *Motion to Withdraw the Reference*, as well as a separate *Jury Demand*.[16]  Upon filing the *Motion to Withdraw the Reference*, the above-captioned District Court civil action was created and assigned to the Honorable Jane Boyle.  The bankruptcy court held a status conference, as required by Local Bankruptcy Rule 5011-1, on October 7, 2020, to assist in the bankruptcy court's preparation of this Report and Recommendation.

1.  *The Movants' Position.*

The JGB Defendants (***minus JGB Collateral***) argue that the claims against them include noncore claims, and that they have never consented to a trial before the bankruptcy court.[17] Specifically, the JGB Defendants (minus JGB Collateral) argue that the claims against them, that happen to invoke TUFTA (Count 6) and the equitable marshaling doctrine (Count 3), are noncore in nature. Thus, allegedly, mandatory withdrawal of the reference is implicated, at least as to those noncore claims. ***Why did one of the four JGB Defendants—JGB Collateral—not join in the Motion to Withdraw the Reference and seek a jury trial?*** It was no doubt because JGB Collateral

---

[16] Adversary Case No. 20-03086, Dkt. 6 & 7.
[17] Adversary Case No. 20-03086, Dkt. 7.

filed a proof of claim in each of the bankruptcy cases[18] and (as explained further below), it must have realized that this had the effect of transforming all of the claims the Trustee asserted against it into: (a) statutory core claims;[19] as well as (b) claims over which the bankruptcy court would likely have constitutional authority.[20] As further explained below, the court does not view JGB Collateral as distinguishable from the other JGB Defendants because ***it is clear from reviewing the proofs of claim that JGB Collateral filed that it is acting as agent for all of the JGB Defendants. Each of the three other JGB Defendants (besides JGB Collateral) made separate loans to the Debtors while JGB Collateral, as agent, received the security interest in the Debtors' assets***.[21]

2. *The Trustee's Position*

The Trustee, subsequently, filed his response opposed to the *Motion to Withdraw the Reference*. The Trustee disagrees with the JGB Defendants as to which matters are core and which are noncore. While the JGB Defendants (minus JGB Collateral) have argued that the marshaling request (Count 3) and TUFTA claims (Count 6) can exist outside of bankruptcy and, therefore, are

---

[18] POC No. 31 in the JR, Inc. Bankruptcy Case and POC No. 46 in the TLC Bankruptcy Case.

[19] 28 U.S.C. § 157(b)(2)(C).

[20] *See, e.g., Stern v. Marshall*, 564 U.S. 462, 497, 499 (2011) (bankruptcy court did not have constitutional authority to finally adjudicate debtor's tortious-interference-with-inheritance claim against her stepson, even though stepson had filed a proof of claim—that had been earlier resolved—which proof of claim asserted damages against the debtor for the tort of defamation; although the debtor argued that her tort claim was a "counterclaim" against the stepson's proof of claim, and thus "core" pursuant to 28 U.S.C. § 157(b)(2)(C), the Court held that "there was never any reason to believe that the process of adjudicating [the stepson's] proof of claim would necessarily resolve [the debtor's] counterclaim."). In summary, in *Stern*, the Supreme Court held that, even if a claim or cause of action has been defined by Congress as a "core" claim, in 28 U.S.C. § 157(b)(2), over which a bankruptcy court can statutorily issue final orders and judgments, a bankruptcy court (as a non-Article III court) may nevertheless lack ***constitutional*** authority to enter final orders or judgments with regard to such claim ***unless*** "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process"). As later explained, the bankruptcy court believes here—unlike in *Stern*—that the Trustee's claims must necessarily be resolved as part of the process of allowing or disallowing the JGB Defendants' proofs of claim.

[21] The court takes judicial notice of POC No. 31 in the JR, Inc. Bankruptcy Case and POC No. 46 in the TLC Bankruptcy Case, in which JGB Collateral is identified as the "collateral agent" and in which the supporting documentation is indicative of its agency relationship with the remaining JGB Defendants.

11

noncore in nature[22]—presumably conceding that the bankruptcy court has authority to adjudicate the other claims (5, 7, and 8) over the JGB Defendants—the Trustee, on the other hand, has essentially argued that: (a) not only are the majority of the claims in the Complaint core by *statutory* definition;[23] but (b) since JGB Collateral (on behalf of all of the JGB Defendants) has filed a proof of claim in the underlying bankruptcy cases, this alters the nature of any *Stern*-type claims (*i.e.,* claims that are statutory "core" but might be constitutionally off-limits for a bankruptcy court to finally adjudicate, absent a defendant having filed a proof of claim that is intertwined with the estate claims);[24] and (c) all claims are, at bottom, challenging the JGB Defendants' right to collect a debt against the estate and, thus, should be considered within both the statutory and constitutional authority of the bankruptcy court to finally adjudicate. In summary, according to the Trustee, all of the claims brought against the JGB Defendants can be finally adjudicated by the bankruptcy court, and the District Court is not required to withdraw the reference.[25]

### 3. *The Rochon Defendants' Non-Position*

As earlier mentioned, the Rochon Defendants have not appeared in this Adversary Proceeding (although they have informally obtained extensions on their answer deadline from the Trustee, which extensions have now expired in this Adversary Proceeding). Not only have they never

---

[22] *Defendants Reply in Support of Motion to Withdraw the Reference*, Adversary Case No. 20-03086, Dkt. 20 at 2-4.

[23] *Trustee's Response Opposed to JGB Collateral's Motion to Withdraw the Reference*, Adversary Case No. 20-03086, Dkt. 14 at 6.

[24] *See Stern*, 564 U.S. 462. Subsequent to *Stern*, bankruptcy practitioners and courts have begun referring to certain claims as "*Stern*-type claims"—meaning claims that are defined as "core" in 28 U.S.C. § 157(b)(2) but are nevertheless beyond the authority of the bankruptcy courts to finally adjudicate, as the claims do not stem from the Bankruptcy Code or bankruptcy case itself, or would not necessarily have to be resolved in the claims allowance process.

[25] Adversary Proc. No. 20-03086, Dkt. 14 at 9.

answered or otherwise defended, but the Rochon Defendants also have not filed any proofs of claim in the underlying bankruptcy cases.

## III.   A MIXTURE OF CORE AND NONCORE CLAIMS ARE INVOLVED, BUT CORE CLAIMS PREDOMINATE

As explained by the Supreme Court in *Stern v. Marshall*, Congress has divided bankruptcy ***proceedings*** (*i.e.,* adversary proceedings or contested matter within a bankruptcy case)—over which there is bankruptcy subject matter jurisdiction—into three different categories: those that "aris[e] under" Title 11; those that "aris[e] in" a Title 11 case; and those that are "related to" a case under Title 11.[26] Further, those that arise under Title 11 or arise in a Title 11 case are defined as "core" matters[27] and those that are merely "related to" a Title 11 case are defined as "noncore" matters. The significance of the "core"/"noncore" distinction is that bankruptcy courts may statutorily hear and enter final judgments in "core" proceedings in a bankruptcy case, while in "noncore" proceedings, the bankruptcy courts instead may only (absent consent from all of the parties) submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment. This is the statutory framework collectively set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157.  But while a proceeding may be "core," in nature under 28 U.S.C. § 157(b)(2), and the bankruptcy court, therefore, has the ***statutory*** power to enter a final judgment on the claim under 28 U.S.C. § 157(b)(1), *Stern* instructs that any district court, in evaluating whether a bankruptcy court has the ability to issue final orders and judgments, must resolve not only: (a) whether the bankruptcy court has the statutory authority under 28 U.S.C. §

---

[26] 28 U.S.C. § 1334(b); *Stern v. Marshall*, 564 U.S. at 473-474.

[27] *Stern v. Marshall*, 564 U.S. at 473-474.  Core proceedings include, but are not limited to, 16 different types of matters, including "counterclaims by [a debtor's] estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).

157(b) to issue a final judgment on a particular claim; but also (b) whether the conferring of that authority on the bankruptcy court is constitutional (and this turns on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").[28]

With respect to the *JGB Defendants*, all counts against them are statutorily core in nature.[29] While Count 3 (and, arguably a portion of Count 6—which seeks state law TUFTA relief in addition to relief under Bankruptcy Code section 548) can exist outside of the context of a bankruptcy case, they are nevertheless *statutorily "core,"* pursuant to 28 U.S.C. § 157(b)(2)(C)— to the extent they are counterclaims to JGB Defendants' proofs of claims (which the bankruptcy court believes they are). Moreover, the bankruptcy court believes there is no constitutional problem with the bankruptcy court adjudicating all of the Trustee's claims against the JGB Defendants because resolving the Trustee's claims will be necessarily and inextricably intertwined with the process of resolving the JGB Defendants' proofs of clam. The bankruptcy court believes that the proofs of claim filed by JGB Collateral *are binding on all JGB Defendants*, even though filed in the name of JGB Collateral. JGB Collateral filed the proofs of claim as the agent of each of the three other JGB Defendants which actually lent the funds to the Debtors: (a) JGB Partners (lent $2,631,579); (b) JGB Cayman (lent $1,842,105.30); and JGB Capital (lent $789,473.70).

Finally, to be clear, the mere fact that the JGB Defendants have filed proofs of claim in the bankruptcy case did not automatically give the bankruptcy court the constitutional authority to adjudicate all of the Trustee's claims against the JGB Defendants. However, because the Trustee's claims are essentially counterclaims to the JGB Defendants' proofs of claim, *that are inextricably*

---

[28] *Stern v. Marshall*, 564 U.S. at 499.
[29] 28 U.S.C. § 157(b)(2)(A), (B), (C), (F), (H), (K), (O).

*intertwined with resolving the proofs of claim themselves*, the bankruptcy court can constitutionally issue final orders/judgments, despite the fact that two Counts (Count 3 (marshaling) and Count 6 (TUFTA)) might exist outside of the realm of bankruptcy.

Turning now to the ***Rochon Defendants***, three out of the four counts against them (Counts 1, 2, and 3) are noncore "related to" in nature, and ordinarily could not be finally adjudicated by the bankruptcy court in the absence of consent to final adjudication by the Rochon Defendants. To be clear, they are, primarily, state law counts that neither "arise under" Title 11 nor can only "arise in" a Title 11 case, but are nevertheless "related to" the bankruptcy case, because the outcome of Counts 1, 2, and 3 will have an impact on the bankruptcy estate being administered. Moreover Count 4, which is a preference count against John and Donna Rochon, would be a *Stern*-type claim (*i.e.*, statutorily "core," pursuant to 28 U.S.C. § 157(b)(2)(F), but there would be a constitutional problem with the bankruptcy court finally adjudicating it, without consent from John and Donna Rochon—since the Rochons have not filed any proof of claim).[30] However, as noted above, the Rochon Defendants have not answered. Therefore, they have neither consented, nor non-consented, to bankruptcy court adjudication of the claims against them. Under different circumstances, the bankruptcy court might recommend bifurcation of the noncore claims against the Rochon Defendants, for them to be tried separately in the District Court. But here, it would make little sense, since the Rochon Defendants have not appeared. If they later appear (seeking leave to file a late Answer) and they do not consent and/or if they request a jury trial, the bankruptcy court can consider and make a Report and Recommendation to the District Court regarding any motion to withdraw the reference that they might file at that time. But for now, the

---

[30] *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (technically dealt with jury trial rights but reasoning is analogous).

15

court believes it is proper to deem that the Rochon Defendants (by their silence on the issue), have impliedly consented to bankruptcy court adjudication[31] and allow the bankruptcy court to adjudicate these related-to noncore claims.

## IV. JURY TRIAL RIGHTS AND DEMANDS

Finally, the JGB Defendants (except for JGB Collateral) have demanded a jury trial. As earlier mentioned, the Rochon Defendants have not—they have not filed anything in this Adversary Proceeding. Thus, the court herein addresses only the JGB Defendants' right to a jury trial, if any.

Pursuant to 28 U.S.C. § 157(e), if a litigant has the right to a jury trial under applicable nonbankruptcy law, a bankruptcy court may conduct the jury trial only if: (a) the matters to be finally adjudicated fall within the scope of bankruptcy subject matter jurisdiction; (b) the district court of which the bankruptcy court is a unit authorizes the bankruptcy court to do so; and (c) all of the parties consent.[32]

Starting first with whether a right to a jury trial even exists, the Seventh Amendment, of course, provides a jury trial right in cases in which the value in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to rights that were tried at law in the late 18th century English courts.[33] Suits "at law" refers to "suits in which legal

---

[31] The Supreme Court has found that a party's ability to impliedly consent must only be "knowing and voluntary" and does not require action on behalf of parties. *Wellness Int'l Network, Ltd. V. Sharif*, 135 S. Ct. 1932, 1948-49 (2015). The Fifth Circuit has held that a creditor impliedly consented to bankruptcy court adjudication after being made aware of a pending adversary proceeding against it, not objecting in the bankruptcy court, and taking no action until after a default judgment was entered to challenge bankruptcy court adjudication. *Beitel v. OCA, Inc.* (*In re OCA Inc.*), 551 F.3d 359, 368 (5th Cir. 2008). This case was seven years before *Wellness*.

[32] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e) (West 2019).

[33] *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999).

rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered."[34] This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature . . . [t]he second stage of this analysis" being "more important than the first."[35]

The Trustee's claims against the JGB Defendants include challenges to the allowance of their claim in bankruptcy, the validity and priority of their liens, and preference payments and fraudulent transfers. These claims are inextricably intertwined with the equitable process of resolving their underlying proofs of claim. The act of filing a proof of claim can operate to deprive a creditor of a jury trial right.[36] By filing their proofs of claim, the JGB Defendants have impliedly consented to bankruptcy court's equitable jurisdiction and waived their right to a jury trial.[37]

## V. PENDING MATTERS

On October 7, 2020, the bankruptcy court held the status conference in regard to *Motion to Withdraw the Reference* and, at which time, the bankruptcy court asserted it would not hear the *Motion to Dismiss* pending the District Court's decision whether to withdraw the reference. However, there is no stay in place in the Adversary Proceeding. Also, there is currently no operative scheduling order. At this point, the parties are not ready for trial.

---

[34] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).
[35] *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (quoting *Granfinanciera*, 492 U.S. at 42).
[36] *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).
[37] *See Langenkamp*, 498 U.S. at 44-45.

## VI.    RECOMMENDATION

In light of:  (a) the predomination of core matters in the *Trustee's Complaint;*[38] (b) the

filing of proofs of claim as to the JGB Defendants—the resolution of which is inextricably

intertwined with the claims asserted against them in the Adversary Proceeding and the

consequence of which waived their jury trial rights; and (c) the Rochon Defendants' failure to

contest the bankruptcy court's authority to issue final orders or judgments on the noncore, related-

to claims against them and failure to seek a jury trial on such claims, the bankruptcy court

recommends that the District Court ***deny*** the motion to withdraw the reference.

**\*\*\*END OF REPORT AND RECOMMENDATION\*\*\***

---

[38] In determining whether to withdraw the reference in a bankruptcy case, "district court[s] should consider the goals of promoting uniformity in bankruptcy administration, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).